# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| -vs- | ) ) No.  CR-01-110-C |
| WILLIAM SHAROD WRIGHT, | ) ) ) |
| Defendant. | ) |

## GOVERNMENT'S RESPONSE TO DEFENDANT'S *PRO SE* MOTION SEEKING RELIEF PURSUANT TO THE FIRST STEP ACT OF 2018

Before the Court is the defendant's *pro se* motion (Doc. 541) seeking sentencing relief pursuant to the First Step Act of 2018.  Mr. Wright requests an additional 7 days per year of good conduct time.  The Court should deny this request, because it is premature.  To the extent Mr. Wright is also seeking retroactive application of the Fair Sentencing Act of 2010, pursuant to Section 404 of the First Step Act, [1] he is ineligible for relief.  Mr. Wright was convicted of a crack cocaine offense during the relevant time period.  However, because he was convicted and sentenced pursuant to 21 U.S.C. § 841(b)(1)(C), he was not subject to a mandatory minimum sentence subsequently lowered by the Fair Sentencing Act.

## Background Information

In June 2001, a grand jury indicted Mr. Wright for his participation in a drug trafficking organization; he was changed in six counts of the 21-count indictment.  PSR

---

[1] Mr. Wright previously filed a handwritten letter seeking the appointment of counsel and any "help" or "relief off of []his 240 month sentence."  Doc.  536.  The Court subsequently appointed the Federal Public Defender to represent Mr. Wright (Doc. 538).  No counseled motion has been filed.

¶¶ 1-3.  Mr. Wright pled guilty to a single count: Count 17, distribution of .73 grams of cocaine base, in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(C).  Docs. 93, 94.  The Government dismissed the remaining counts, including a conspiracy charge, at sentencing.  Doc. 159.

In preparation for that sentencing, the Probation Office calculated Mr. Wright's advisory sentencing range pursuant to the Guidelines.  He was held accountable for 3,745.8625 grams of cocaine base.  PSR ¶ 34.

| | |
|---|---:|
| Base offense level pursuant to U.S.S.G. § 2D1.1 for possession of 3,745.8625 grams of cocaine base.  PSR ¶ 40. | 38 |
| Two-level enhancement pursuant to U.S.S.G. § 2D1.1(b)(1) for possession of a firearm.  PSR ¶ 41. | +2 |
| Four-level enhancement pursuant to U.S.S.G. § 3B1.1(a) for being a leader/ organizer of criminal activity involving 5 or more participants.  PSR ¶ 43. | +4 |
| Adjusted Offense Level.  PSR ¶ 45. | 44 |
| Three-level reduction pursuant to U.S.S.G. § 3E1.1(a) and (b) for acceptance of responsibility.  PSR ¶ 46. | -3 |
| Total Offense Level.  PSR ¶ 49. | 41 |

The Report determined Mr. Wright to have nine criminal history points, corresponding with a Criminal History Category IV.  PSR ¶ 59.  An offense level 41 combined with a Category IV criminal history yields an advisory guideline range of 360 months to life.  PSR ¶ 79.  However, since Mr. Wright was charged with a § 841(b)(1)(C) offense, he was not subject to a mandatory minimum sentence and his sentence was capped by the 20-year statutory maximum.  PSR ¶¶ 78, 79.  Accordingly, his guideline range became 240 months.  PSR ¶ 79.

After adopting the PSR's factual findings and Guideline calculation, *see* Statement of Reasons, this Court sentenced Mr. Wright to 240 months' imprisonment to be served consecutively to his pending state sentence. Doc. 160. Mr. Wright unsuccessfully moved for sentencing reductions under Amendments 706 and 782. Docs. 402, 447, 515. While each amendment reduced the U.S.S.G. § 2D1.1 base offense level for the 3,745.8625 grams of cocaine base, the advisory range in each case after the other calculations was still more than the 240-month statutory maximum. Doc. 516.

Argument

**I.   Mr. Wright's Request for Good Conduct Time Credit Is Premature, and Must Be Filed in the District of Confinement Only After He Has Exhausted His Administrative Remedies.**

Section 102(b) of the First Step Act amends 18 U.S.C. § 3624(b) to change the method by which the BOP must calculate good conduct time credits. This subsection becomes effective beginning on the date that the Attorney General completes and releases the risk and needs assessment system under section 101(a) of the Act. The current deadline for that system is July 19, 2019. *See* 18 U.S.C. § 3632(a). Because the risk and needs assessment has not yet been completed, Mr. Wright's motion is premature.

Until this subsection of the First Step Act becomes effective, BOP's calculations are keyed to the sentence an inmate actually serves. 18 U.S.C. § 3624(b) (2018). Under the First Step Act, by contrast, BOP's calculation will be keyed to the sentence imposed, including for time that an inmate never actually serves. The language of the First Step Act provision is not altogether clear, and BOP plans to submit its implementation plan for notice and comment. Nevertheless, the upshot of

the system is that inmates will receive up to 54 days of credit per year of sentence imposed, including for time that they never actually serve.

Pursuant to Section 102(b)(2) and newly enacted 18 U.S.C. § 3632(a), the effective date of this change is deferred until after the Attorney General creates and releases the risk and needs assessment program required by Section 101(a) of the First Step Act, within 210 days of the First Step Act's enactment.[2] Pursuant to Section 102(b)(3) and 18 U.S.C. § 3624(b)(1), this change will apply to all inmates except those serving life sentences, those serving sentences of one year or less, and those who committed the offenses for which they are currently imprisoned before November 1, 1987.[3] Various federal district court have held the provision permitting 54 days of good conduct time credit per year (rather than 47 prior to the First Step Act) has not yet gone into effect. *See Rizzolo v. Puentes*, 2019 WL 1229772, at *3 (E.D. Cal. Mar. 15, 2019); *Schmutzler v. Quintana*, 2019 WL 727794 (E.D. Ky. Feb. 20, 2019); *United States v. Scouten*, 2019 WL 1596881 (W.D.N.Y. Apr. 15, 2019); *Matthews v. Williams*, 2019 WL 1639776 (N.D. Ohio Apr. 16, 2019); *Johnson v. Bureau of Prisons*, 2019 WL 1569360 (N.D. Tex. Apr. 11, 2019); *Roy v. United*

---

[2] Section 102(b)(2) states: "EFFECTIVE DATE.—The amendments made by this subsection shall take effect beginning on the date that the Attorney General completes and releases the risk and needs assessment system under subchapter D of Chapter 229 of title 18, United States Code, as added by section 101(a) of this Act."

[3] Section 102(b)(3) states: "APPLICABILITY.—The amendments made by this subsection shall apply with respect to offenses committed before, on, or after the date of enactment of this Act, except that such amendments shall not apply with respect to offenses committed before November 1, 1987."

*States Bureau of Prisons*, 2019 WL 1441622 (E.D. Wash. Apr. 1, 2019); and *United States v. Parrett*, 2019 WL 1574815 (E.D. Wis. Apr. 11, 2019).

Contrary to Mr. Wright's assertion, the delayed implementation of the new time calculation method does not violate due process. Defendants had no pre-existing entitlement to the benefit of the new computation method. Accordingly, Congress was free to set an effective date of its choosing. Although the legislative history refers to this change as a "fix" to the BOP's approach "to accurately reflect congressional intent," 164 Cong. Rec. S7774 (daily ed. Dec. 18, 2018), there was nothing unlawful about the pre-First Step Act sentence credit system. Indeed, some criminal defendants challenged the BOP's methodology and urged the courts to adopt essentially the First Step Act's approach, but the Supreme Court rejected that challenge and held that the BOP's interpretation was "the most natural reading" of the statute. *Barber v. Thomas*, 560 U.S. 474, 476 (2010).

Similarly, there is no equal protection violation. Other than defendants who offended before November 1, 1987 (and therefore were sentenced under the old parole regime), the new good conduct time credit system applies equally to all inmates, whether they offended "before, on, or after the date of enactment" of the First Step Act. First Step Act of 2018, Pub. L. No. 115-391, § 102(b)(2), 132 Stat. 5194, 5213 (2018); *see also Williams v. Illinois*, 399 U.S. 235, 243 (1970) ("The Constitution permits qualitative differences in meting out punishment and there is no requirement that two persons convicted of the same offense receive identical sentences."). Moreover, Congress rationally chose to give BOP a reasonable time to

develop and implement through notice-and-comment rulemaking a new approach to awarding credit not only for good conduct, but also for successful completion of recidivism reduction programming under 18 U.S.C. § 3632(d)(4). *Cf. United States v. Navarro*, 800 F.3d 1104, 1110–14 (9th Cir. 2015) (rejecting arguments that delayed implementation of Guideline Amendments 782 and 788 violated the Due Process and Equal Protection Clauses because delay provided necessary time for court review, accommodated the need to arrange for transition and reentry programs, and allowed affected agencies to prepare for increased workload).

Additionally, the BOP has exclusive jurisdiction to determine sentence credits, subject to later judicial review via § 2241 habeas review. Unless and until inmates exhaust their administrative remedies with the Bureau, *see* 28 C.F.R. §§ 542.10–.16, district courts cannot afford any relief.

"After a district court sentences a federal offender, the Attorney General, though the BOP, has the responsibility for administering the sentence." *United States v. Wilson*, 503 U.S. 329, 335 (1992). The district court cannot award sentencing credits. *United States v. Pineyro*, 112 F.3d 43, 45 (2d Cir. 1997); *United States v. Cobleigh*, 75 F.3d 242, 251 (6th Cir. 1996); *United States v. McGee*, 60 F.3d 1266, 1272 (7th Cir. 1995); *United States v. Checchini*, 967 F.2d 348, 349–50 (9th Cir. 1992); *United States v Jenkins*, 38 F.3d 1143, 1144 (10th Cir. 1994). Instead, an inmate must exhaust his administrative remedies, and only then, if dissatisfied, may he seek review via a § 2241 habeas petition. *See, e.g.*, *Reno v. Koray*, 515 U.S. 50, 53 (1995) (describing procedural history of inmate's challenge to BOP credit

determination); *see also United States v. Callahan*, 800 F.3d 422, 426 (8th Cir. 2015); *United States v. Nyhuis*, 211 F.3d 1340, 1345 (11th Cir. 2000); *Rogers v. United States*, 180 F.3d 349, 357 (1st Cir. 1999); *McClain v. Bureau of Prisons*, 9 F.3d 503, 505 (6th Cir. 1993); *Checchini*, 967 F.2d at 350; *United States v. Gabor*, 905 F.2d 76, 78 n.2 (5th Cir. 1990); *Staples v. Maye*, 711 Fed. Appx. 866, 867 (10th Cir. 2017). Other courts have recently applied these concepts to good conduct time requests under the First Step Act. *See, e.g. United States v. Powell*, 2019 WL 1521972 at *1-2 (E.D. Ky. Apr. 8, 2019) (calculation of good conduct time is a matter for BOP, not the court, and it may only be challenged via a § 2241 in the district of confinement after exhaustion of administrative remedies).

A petition under Section 2241 ordinarily must be filed in the district of confinement. *See Rumsfeld v. Padilla*, 542 U.S. 426, 442–43 (2004). Here, the defendant is incarcerated at Fort Worth Federal Medical Center in Texas, which is outside the Western District of Oklahoma. Accordingly, he has filed his motion too soon and in the incorrect district.

**II. Mr. Wright Is Not Eligible for Relief Pursuant to § 404 Because He Was Convicted of Violating 21 U.S.C. § 841(b)(1)(C).**

Only one portion of the First Step Act of 2018 ("FSA 2018"), Pub. Law 111-220, permits a district court to reduce a previously imposed sentence. Section 404 of this Act provides:

> A court that imposed a sentence for a covered offense may . . . impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 (Public Law 111–220; 124 Stat. 2372) were in effect at the time the covered offense was committed.

7

The Fair Sentencing Act of 2010 ("FSA 2010") changed the amounts of cocaine base needed to trigger certain statutory minimum and maximum sentences. Under FSA 2010, the amount of cocaine base required to trigger a statutory range of punishment of ten years - life imprisonment was increased from 50 grams to 280 grams. The amount of cocaine base needed to trigger a range of 5 - 40 years' imprisonment was increased from 5 grams to 28 grams:

| **Statutory Penalty** | **Before FSA 2010** | **After FSA 2010** |
|---|---|---|
| 5 year minimum; 40 year maximum (21 U.S.C. § 841(b)(1)(B) | 5 grams | 28 grams |
| 10 year minimum; maximum of life imprisonment (21 U.S.C. § 841(b)(1)(A) | 50 grams | 280 grams |

FSA 2018 essentially permits – but does not require – a sentencing court to reduce a sentence so as to give retroactive effect to FSA 2010 for what are called "covered offenses." This definition is very narrow: the defendant must have been sentenced for an offense committed prior to August 3, 2010, *and* that offense must involve a statutory penalty modified by Sections 2 or 3 of FSA 2010. In other words, relief is only potentially available to defendants who were convicted of, or whose guidelines were calculated based on, crack cocaine offenses, and only if those offenses were committed prior to August 3, 2010. Since Mr. Wright sentence was calculated based on cocaine he distributed in 2000, his conviction appears to be a covered offense. But a closer analysis reveals it is not.

Pursuant to 18 U.S.C. § 3582(c)(1)(B), "a court may modify an imposed term of imprisonment to the extent otherwise expressly permitted by statute." The First Step Act expressly permits the imposition of a reduced sentence in limited circumstances. Once a defendant is determined to have been convicted of a covered offense, the Court will determine what degree of reduction is warranted, if any. As a practical matter, this determination involves a two-step procedure. At step one, the Court will determine pursuant to § 3582(c)(1)(B) if the defendant is subject to a new statutory minimum based on the provisions of the Fair Sentencing Act that increased quantity thresholds. Then at step two, the Court will apply § 3582(c)(2) to give the defendant the benefit of intervening guideline amendments.

A defendant is only eligible for relief under FSA 2018 if applying Sections 2 and 3 of FSA 2010 results in a different statutory range of punishment than the one applied at the defendant's sentencing. Here, Mr. Wright's motion fails. While his conviction is for a crack offense committed during the relevant time period, he was sentenced under § 841(b)(1)(C), which does not contain a mandatory minimum. Accordingly, Sections 2 and 3 of the FSA do not apply. *See United States v. Hunter*, 2019 WL 1220311 (D. Conn. Mar. 15, 2019) ("[T]he Fair Sentencing Act did not modify the statutory penalties for a violation of § 841(b)(1)(C), and by extension. . . Mr. Hunter's crime of conviction is not a covered offense under the First Step Act.").

Section 3582(c)(1)(B) is the jurisdictional vehicle that allows the Court to review Mr. Wright's sentence. Since Mr. Wright was not convicted of an offense subject to a statutory minimum sentence modified by FSA 2010, he fails, at step one, to qualify for

9

the relief expressly authorized by the First Step Act.  Nonetheless, were this Court permitted to consider the Guideline range at step two, his guideline range remains unchanged.

| **Original Guideline Calculation** | 3,745.8625 grams of cocaine base | **New Guideline Calculation** |
|---|---|---|
| 38 | BOL per U.S.S.G. § 2D1.1 | 34 |
| +2 | Poss. of Firearm per U.S.S.G. § 2D1.1(b)(1) | +2 |
| +4 | Leader/organizer per U.S.S.G. § 3B1.1(a) | +4 |
| 44 | Adjusted BOL | 40 |
| -3 | Accept. of Resp. per U.S.S.G. § 3E1.1 | -3 |
| 41 | Final OL | 37 |
| IV | Criminal History Category | IV |
| 360-life but 240 (statutory maximum) | Range | 360-life but 240 (statutory maximum) |

For these reasons, the defendant's motion should be denied.

Respectfully submitted,

ROBERT J. TROESTER
First Assistant United States Attorney

/s/*Timothy W. Ogilvie*
TIMOTHY W. OGILVIE
Bar Number:  12428
Assistant United States Attorney
210 Park Avenue, Suite 400
Oklahoma City, Oklahoma 73102
(405) 553-8700 (Office)
(405) 553-8888 (Fax)
Tim.ogilvie@usdoj.gov

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 25, 2019, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:  Susan Otto:  susan_otto@fd.org.

/s/*Timothy W. Ogilvie*